431 P.2d 121

**Randal BRYANT, Plaintiff and Appellant,**

**v.**

**John W. TURNER, Warden, The Utah State Prison, Defendant and Respondent.**

No. 10757.

Supreme Court of Utah.

Aug. 14, 1967.

Hatch & McRae, Sumner J. Hatch, Salt Lake City, for appellant.

Phil L. Hansen, Atty. Gen., Salt Lake City, for respondent.

CROCKETT, Chief Justice:

Randal Bryant, who is serving a life sentence for murder in the Utah State Prison, sought release through habeas corpus proceedings. After a plenary hearing the district court dismissed his petition. He appeals.

In July of 1963 Mr. Bryant [we retain designation as defendant] was charged with the first-degree murder of his wife, Maxine B. Bryant. Pursuant to regular proceedings in which the defendant was represented by counsel he was bound over to the district court to stand trial on that charge. Before the entry of a plea, upon a request that the defendant's sanity be determined, the district judge, C. Nelson Day, ordered him to the Utah State Hospital for observation and determination of his sanity, both as of the time of the offense and at the then instant time, September, 1963.

After the 30-day observation period had elapsed the court conducted a sanity hearing on November 2, 1963. It was continued to December 10, 1963, for further hearing, following which Judge Day stated his conclusion:

* * * Gentlemen, it is my thinking that the evidence adduced from Dr. Kiger and the other doctor who previously testified with him, James R. Whitten, M. D., a resident psychiatrist from the Salt Lake General Hospital, as well as Dr. Ruesh and Dr. McGregor, that the Court must find that the defendant, Mr. Bryant, is and was at the time of the commission of this offense sufficiently and mentally aware and capable to warrant the submission of the matter to a Jury. For this reason, the matter will be set on the calendar for arraignment.

Thereafter, on the 21st day of February, 1964, the defendant entered a plea of guilty to a reduced charge of second-degree murder, upon which the sentence he is serving was imposed and he was committed to the Utah State Prison March 10, 1964. No appeal was taken from that judgment and sentence.

It was over two years later, on June 28, 1966, that the instant petition for habeas corpus was filed. The substance of plaintiff's position is that he had suffered some brain damage due to cerebral hemorrhage, and that he is afflicted with aphasia, that is, a difficulty in communicating with others. The evidence tends to indicate that while he understands what is said to him by others, he had difficulty in expressing his ideas back to them. He avers that because of this inability to communicate he was not and could not be represented effectively by counsel. This petition was heard before another district judge, Hon. Leonard W. Elton, who found the issues against the plaintiff Bryant and denied the petition.

This proceeding is an attempt to do that which should not be done nor countenanced in our procedure: to turn habeas corpus into an appellate review. That is not its purpose, and it is not so intended.[1] The regular steps of criminal procedure provided for in our law give adequate protections of the rights of one accused of crime and safeguards against conviction of the innocent.[2] They afford full opportunity to present and have determined any matters of defense, and to make objections to any error or impropriety that may affect his rights. Moreover, after judgment is entered, there is assured a right of appeal within the proper time to seek redress for any such error or transgression of those rights.[3] When this procedure has been followed the judgment should normally be final. It should not be subjected to a continual merry-go-round of collateral attacks upon various and specious pretexts as some courts are prone to permit nowadays. In our opinion such an inconsiderate attitude toward final judgments regularly arrived at by courts of competent jurisdiction robs the law of the dignity and respect it is entitled to. It tends to degrade the whole process of law enforcement and the administration of justice and thus to undermine the good order of society it is purposed to maintain.

We do not mean to say that the time honored writ of habeas corpus does not have a very important and useful purpose in our law.[4] But that purpose is not to review a final judgment arrived at through regular proceedings and due process of law by a court having jurisdiction. The writ is, as our rules describe it, an extraordinary writ, to be used to protect one who is restrained of his liberty where there exists no juris-

---

1. Cf. a good discussion by Justice Murphy in Price v. Johnston, 334 U.S. 266, 68 S. Ct. 1049, 92 L.Ed. 1356.
2. See Utah Constitution, Art. I, Sec. 12; Secs. 77–1–8 to 77–1–10, U.C.A.1953.
3. See Utah Constitution, Art. VIII, Sec. 9; Sec. 77–39–5, U.C.A.1953.
4. See Edward Jenks, The Story of Habeas Corpus, Vol. 2, Select Essays in Anglo-American Legal History; Alexander, The Law of Arrests, Ch. 13.

diction or authority, or where the requirements of the law have been so ignored or distorted that the party is substantially and effectively denied what is included in the term due process of law,[5] or where some other such circumstance exists that it would be wholly unconscionable not to re-examine the conviction.[6]

■ We are in accord with the view taken by the trial court: that the issue as to the plaintiff's competency, both at the time of the crime and of the trial, having been previously raised and determined in the original proceeding before Judge Day, effectively disposes of the issue raised in this proceeding. No appeal having been taken from the judgment it became final and the issue was res adjudicata. Therefore, consistent with the principles hereinabove discussed, it is not subject to review in this habeas corpus proceeding.

■ Defendant raises another and separate objection to his imprisonment: that because of his affliction he is unable to engage in normal prison activities, or in any recreational or rehabilitation programs, which makes prison a severe hardship upon him, and that this constitutes constitutionally prohibited cruel and unusual punishment. His affliction is certainly unfortunate and indeed inspires sympathy. One cannot but feel the same emotion for his so brutally-treated wife, and wish the defendant could have been affected by a similar sympathy prior to her tragic murder. His plea for sympathy is somewhat reminiscent of the often-told classic about the accused who had killed his parents, and threw himself upon the mercy of the court on the ground that he was an orphan. But more directly to the point: we are not aware that any special aptitude or ability is required to qualify one for prison service resulting from his crimes. It is undoubtedly a severe hardship for many in various ways; and this may differ in individuals. That is one of the problems of penology. But we do not see the facts here shown as presenting any question as to the lawfulness of the restraint of this defendant.

Affirmed. No costs awarded.

CALLISTER, TUCKETT, HENRIOD, and ELLETT, JJ., concur.

5. We are not unaware of the gradual expansion of the functions of habeas corpus. See Frank v. Mangum, 237 U.S. 309, 334, 35 S.Ct. 582, 59 L.Ed. 969 (1915); Leyra v. Denno, 347 U.S. 556, 558, 74 S.Ct. 716, 98 L.Ed. 948 (1954); see 26 Montana Law Review 57, excellent note by Gorham Swanberg.

6. Some examples of which are: where it is clearly and indisputably shown that there was mistaken identity, or a knowing and wilful presentation of false evidence, or suppression of material evidence by the prosecution. Cf. statement in Gallegos v. Turner, 17 Utah 2d 273, 409 P.2d 386.