William Henry HAMMOND, Appellant,

v.

UNITED STATES of America, Appellee.

No. 74–2226.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1975.

Decided Dec. 23, 1975.

---

James H. Lengel [third-year law student], and William T. Toal, Columbia, S. C. [court-appointed counsel], for appellant.

Eric Wm. Ruschky, Asst. U. S. Atty. (Mark W. Buyck, Jr., U. S. Atty., on brief), for appellee.

Before HAYNSWORTH, Chief Judge, WINTER, Circuit Judge, and WATKINS,* Senior District Judge.

**WINTER, Circuit Judge:**

William Henry Hammond, a federal prisoner, appeals the district court's summary dismissal of his motion, pursuant to 28 U.S.C. § 2255, to vacate his sentences. Hammond was sentenced to concurrent terms of 20 years for bank robbery and 5 years for conspiracy to commit bank robbery upon his pleas of guilty. Because we think that he has alleged facts which, if proven, demonstrate that he was not afforded effective representation of counsel, and that his pleas were involuntary, we reverse and remand the case for a plenary hearing.

**I.**

On March 8, 1972, Hammond was charged in two separate indictments with two counts of violating 28 U.S.C. § 2113(a) (bank robbery), two counts of violating 28 U.S.C. § 2113(d) (use of a dangerous weapon in the commission of bank robbery), and one count of violating 18 U.S.C. § 371 (conspiracy to commit bank robbery). When he was arraigned on August 14, 1972, the clerk of the district court informed Hammond that he faced a maximum sentence of 20 years on each of the simple bank robbery counts, 25 years on each of the armed bank robbery counts, and 5 years on the conspiracy count. The information thus given him could well have led him to believe that he faced a total maximum sentence of 95 years if he pled not guilty and was convicted on all counts.

In his motion to vacate, Hammond alleged that his court-appointed counsel advised him that if he went to trial and was convicted on all charges, he would receive a sentence of 90 years; and even if he was successful in asserting a defense of insanity based upon his drug addiction and the need to obtain funds to support his habit, he would be placed in a mental institution for the rest of his life.[1] Hammond further alleged that since he was a "relatively young man," the prospect of a 90-year sentence or lifetime confinement in a mental institution coerced him into acceptance of the plea bargain which was offered him and rendered his guilty plea involuntary. The fact that there was a plea bargain was fully disclosed at the arraignment. The government agreed that if Hammond pled guilty to the conspiracy count and one count of simple bank robbery, the government would dismiss the remaining counts. Under the plea bargain, Hammond could have received maximum aggregate sentences of 25 years. He actually received concurrent sentences aggregating 20 years.

Hammond's court-appointed counsel made an affidavit in opposition to Hammond's motion to vacate. Counsel denied that Hammond was coerced, threat-

---

* R. Dorsey Watkins, Senior United States District Judge for the District of Maryland, sitting by designation.

1. Hammond's competency to stand trial and to be held criminally accountable for commission of the crimes with which he was charged was fully explored in the district court. He was examined by government psychiatrists and, at the government's expense, by another psychiatrist of his own choosing. In connection with a determination of whether Hammond's incriminating statements to the F.B.I. were voluntary and hence admissible, the district court found that Hammond was competent to stand trial and was competent at the time that the offenses were committed. These conclusions of the district court were fully supported by the record and we accept them as correct. We therefore give no further consideration to his contention that he was misadvised as to this defense since it was not in fact available to him.

ened or intimidated into tendering pleas of guilty either by counsel or anyone else. He stated, "I did advise Mr. Hammond of the maximum sentence that could be imposed and clearly stated to him that any sentence was in the sole discretion of the Court. I personally never promised any sentence length, nor was a length of sentence ever promised, to my knowledge, by anyone connected with this case." While counsel asserts that he advised Hammond of the maximum sentence that could be imposed, counsel does not disclose what he told Hammond that the maximum sentence was. Hammond's assertion that he was told by his lawyer that his sentences could aggregate 90 years thus is not effectively controverted, and, when coupled with the information imparted by the clerk that his sentences could aggregate 95 years, would support the inference that Hammond reasonably believed a 90- or 95-year sentence awaited pleas of innocent, should he be found guilty.

At the time that Hammond's guilty pleas were accepted, it was clearly the law in this circuit that a defendant could not be sentenced under both 18 U.S.C. § 2113(a) and 18 U.S.C. § 2113(d) for the same bank robbery. *Walters v. Harris,* 460 F.2d 988, 994 (4 Cir. 1972), cert. denied, 409 U.S. 1129, 93 S.Ct. 947, 35 L.Ed.2d 262 (1973). *See Heflin v. United States,* 358 U.S. 415, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959); *Prince v. United States,* 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed.2d 370 (1957). Had Hammond pled innocent and been convicted on all charges, he could at most have received a sentence of 55 years: 25 years for each of the two counts of violating 18 U.S.C. § 2113(d), and 5 years on the conspiracy count. So far as the record reveals, therefore, Hammond could have believed that he was trading the possibility of a maximum 90- or 95-year sentence for the possibility of a maximum 25-year sentence, while in fact he was trading the possibility of a maximum 55-year sentence for the possibility of a maximum 25-year sentence.

## II.

Although counsel for Hammond treats this as a case where Rule 11, F.R.Cr.P., was not fully satisfied, we think otherwise. The transcript of Hammond's arraignment shows that a *prima facie* showing of voluntariness of the pleas was demonstrated on the record. It is true that Rule 11 requires a district court, before accepting a guilty plea, to address a defendant personally to establish, *inter alia,* that the defendant understands the "consequences of the plea." This phrase was added by the 1966 Amendments to Rule 11. The Committee Note to the 1966 Amendments to Rule 11 explains that this language was added "to state what clearly is the law," citing *Pilkington v. United States,* 315 F.2d 204 (4 Cir. 1963), and other authorities. *Pilkington,* typical of the cited authorities, is distinguishable. It held that a guilty plea may be involuntary if entered under a misapprehension about the maximum penalty which may await it. In this case, Hammond's claim is that he was misinformed about the consequences of pleading not guilty if he should be convicted after a trial, not of the penalty to which he exposed himself by his pleas of guilty.

Although the tender and acceptance of the plea appear to be in conformity with Rule 11, that is not the end of the case. In *Fontaine v. United States,* 411 U.S. 213, 93 S.Ct. 1461, 36 L.Ed.2d 169 (1973), it was held that a plenary hearing must be afforded a defendant who alleges that his plea was coerced, notwithstanding that in proceedings under Rule 11 he acknowledged that his plea was given voluntarily and knowingly. The Court said, "[t]he objective of Fed.Rule Crim. Proc. 11, of course, is to flush out and resolve all such issues, but like any procedural mechanism, its exercise is neither always perfect nor uniformly invulnerable to subsequent challenge calling for the opportunity to prove the allegations." 411 U.S. at 215, 93 S.Ct. at 1462. (Footnote omitted.)

We see the case as one where, accepting as true Hammond's claim that he was misadvised by his lawyer as to the factual bases on which he was required to decide whether to plead guilty, there was ineffective assistance of counsel and a lack of voluntariness in the plea because it was not understandingly made. *Cooks v. United States,* 461 F.2d 530 (5 Cir. 1972), is directly in point. In *Cooks,* the defendant was indicted on six counts of interstate transportation of forged securities. On its face, the indictment was fatally infirm because it alleged only a single act of transportation during which six forged American Express money orders were transported collectively; there was thus only a single violation of the statute, not six violations. Defendant's court-appointed counsel did not recognize the infirmity in the indictment; he advised the defendant that he would face a maximum sentence of 60 years if he were found guilty on all counts and that he should therefore accept a plea bargain whereby he would plead guilty to one count and face a maximum penalty of 10 years. When defendant filed a motion to vacate, alleging the facts and asserting that his plea was involuntary and that he did not receive effective assistance of counsel, the Court of Appeals held that defendant was entitled to relief. It said that "[w]here counsel has induced defendant to plead guilty on the *patently erroneous* advice that if he does not do so he may be subject to a sentence six times more severe than that which the law would really allow, the proceeding surely fits the mold we describe as a 'farce and a mockery of justice.'" 461 F.2d at 532 (emphasis in original), *citing Busby v. Holman,* 356 F.2d 75, 79 (5 Cir. 1966).

While the court was careful to point out that counsel's inability to foresee decisions which will dispossess the trial court's power to impose a particular sentence does not render counsel's representation ineffective, it had no difficulty in concluding that where the law was well established that defendant could not possibly receive a total sentence of 60 years on the indictment, there was ineffective assistance of counsel. And where counsel was ineffective, it was held that the plea was not voluntary because it was not made with knowledge of the factors pertinent to a proper determination of whether to plead guilty or not.

■ The alleged misadvice of counsel in the instant case was so gross that we think *Cooks* should be followed. Hammond was told that if he went to trial and was convicted, he could be sentenced to at least 35 and perhaps 40 more years than the law would allow. This may well have induced a guilty plea that would not have been forthcoming if Hammond had been correctly told that his plea would reduce his exposure to a maximum sentence by only 30 years rather than by 60 or 65 years. This is not to say, of course, that every item of misinformation which counsel may impart vitiates the voluntariness of a plea. Each case must depend largely on its own facts. A mistake of a few years in advice about the length of what would otherwise be a long term would not constitute ineffectiveness of counsel. But for a relatively young defendant, we can only conclude that erroneous advice that he could be sentenced to 90 or 95 years if he went to trial and was found guilty on all of the charges against him, when in fact the maximum sentence was 55 years and therefore his plea of guilty might save him 30 years and not 60 or 65 years as he was told, constitutes ineffectiveness of counsel.

If counsel was ineffective, it follows that Hammond's pleas were involuntary. The *Brady* trilogy (*Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); and *Parker v. North Carolina,* 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970)) makes it perfectly plain that the *sine qua non* to a voluntary plea of guilty is the assistance of counsel "within the range of competence required of attorneys representing defendants in criminal cases." *Parker,* 397 U.S. at 797–98, 90 S.Ct. at 1462. Of

19

course, in *Brady, McMann* and *Parker* counsel was found competent and the voluntariness of the guilty pleas was upheld; but had counsel's advice been materially incompetent, we think that the court would have reached a different result. This conclusion stems from *Brady's* adoption, 397 U.S. at 755, 90 S.Ct. 1463, of the standard for voluntariness of guilty pleas formulated by Judge Tuttle of the Fifth Circuit in *Shelton v. United States,* 246 F.2d 571, 572 n. 2 (5 Cir. 1957), *rev'd on confession of error on other grounds,* 356 U.S. 26, 78 S.Ct. 563, 2 L.Ed.2d 579 (1958):

> [A] plea of guilty entered by one fully aware of the direct consequences, *including the actual value of any commitments made to him by the court,* prosecutor, or his own counsel, must stand unless induced by threats . . misrepresentation . . . or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business . . .. (Emphasis added.)[2]

■ Thus, in order to plead voluntarily, a defendant must know the direct consequences of his plea, including "the actual value of any commitments made to him." Where, as here, counsel's alleged advice, corroborated by the information supplied by the court, grossly exaggerated the benefit to be derived from the pleas of guilty, it would follow that the pleas were not voluntary. Hammond must be given the opportunity to prove his case.

*Reversed and remanded.*

2. Other language in *Brady* reinforces this conclusion. In holding Brady's plea voluntary, the court pointed out that Brady "had competent counsel and full opportunity to assess the advantages and disadvantages of a trial as compared with those attending a plea of guilty . . .." 397 U.S. at 754, 90 S.Ct. at 1472.