**STATE of Utah, Plaintiff and Appellee,**

v.

**J. Ronald WEST, Defendant and Appellant.**

**No. 20856.**

Supreme Court of Utah.

Sept. 26, 1988.

Rehearing Denied Dec. 6, 1988.

Kent O. Willis, Provo, for defendant and appellant.

David L. Wilkinson, Sandra L. Sjogren, Salt Lake City, for plaintiff and appellee.

DURHAM, Justice:

Defendant appeals from the trial court's denial of his motion to withdraw his guilty plea. We reverse and remand.

On January 31, 1984, defendant was charged with sexual abuse of a child, then a first degree felony under Utah Code Ann. § 76–5–404.1(1)–(2) (Supp.1983) (amended 1984) carrying a sentence of five years to life. Based on that charge, defendant agreed to forego his right to a jury trial and to plead guilty to the second degree felony of attempted sexual abuse of a child. Pursuant to this plea bargain, the information was amended on February 9, 1984, to charge defendant with attempted sexual abuse of a child. Before defendant's arraignment and sentencing, however, the Utah state legislature amended Utah Code Ann. § 76–5–404.1, making sexual abuse of a child a second degree felony. Thus, the crime to which defendant pleaded guilty, attempted sexual abuse of a child, was actually a third degree felony. *See* Utah Code Ann. § 76–4–102(3). Apparently, both parties and the court were unaware of this legislative change, and defendant was permitted to plead guilty to a second degree felony, a crime that no longer existed. Defendant was sentenced for the second degree felony on July 20, 1984.

Defendant submitted a motion to withdraw his guilty plea in Fourth District Court on June 17, 1985.[1] Acting as his own attorney, defendant maintained that he would not have pleaded guilty if he had known that the crime he had been charged with was only a third degree felony. Therefore, he argued, his plea was not knowing and voluntary. The State objected to the motion on the grounds that it was untimely and that defendant had already requested resentencing in a separate habeas corpus proceeding before the Third District Court. The Fourth District Court denied defendant's motion to withdraw his guilty plea on July 2, 1985.

On June 25, 1985, in a separate habeas proceeding, the parties stipulated before the Third District Court that defendant had been improperly sentenced to a second degree felony and was entitled to receive the lesser penalty for committing the third degree felony of attempted sexual abuse of a

child. A copy of the stipulation was not transmitted to the Fourth District Court until August 23, 1985, when defendant was resentenced. This occurred almost two months after defendant's motion to withdraw his guilty plea was denied. Defendant appeals the denial of his motion to withdraw his guilty plea, but not the disposition of his habeas corpus proceeding.

Even though defendant did not file a direct appeal from his original conviction, he does directly appeal the trial court's denial of his motion to withdraw his guilty plea, and we will consider those claims. A review of the record suggests that defendant was probably unaware of the irregularities and discrepancies surrounding his arraignment and sentencing. The record does not contain evidence suggesting that defendant was aware of the statutory confusion prior to sentencing. In its opposition to defendant's motion to withdraw his plea, the State did assert that defendant and other parties were aware of the statutory changes, but no supporting affidavit or documentation was attached to the State's argument. It is difficult to believe, therefore, that defendant would have allowed himself to be sentenced to a non-existent crime if he, his counsel, and the court had been aware that the plea bargain was negotiated pursuant to a mutual misunderstanding. *See, e.g., State v. Chavez,* 130 Ariz. 438, 636 P.2d 1220 (1981).

■ The dissenting opinion argues that defendant is precluded from directly appealing the trial court's denial of his motion because it is a successive postconviction complaint. Under Utah authority, however, defendant's failure to raise an issue of which he was aware, or should have been aware, at the time of conviction or appeal is not necessarily determinative of his petition. This Court has frequently addressed the merits of habeas claims even though the issues were not raised at the time of conviction or on direct appeal. *See, e.g., Chess v. Smith,* 617 P.2d 341 (Utah

---

1. Defendant's motion was not recorded as being filed with the court clerk until July 2, 1985. The State's response, however, was filed with

the court on June 25, 1985. Therefore, the process was commenced on or before June 25, 1985.

1980); *Gonzales v. Morris*, 610 P.2d 1285 (Utah 1980); *Pierre v. Morris*, 607 P.2d 812 (Utah), *cert. denied*, 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120 (1980); *Martinez v. Smith*, 602 P.2d 700 (Utah 1979); *Helmuth v. Morris*, 598 P.2d 333 (Utah 1979); *Rammell v. Smith*, 560 P.2d 1108 (Utah 1977); *Allgood v. Larson*, 545 P.2d 530 (Utah 1976); *Brown v. Turner*, 21 Utah 2d 96, 440 P.2d 968 (1968). Many of these cases presented situations less unusual than that now before us. Thus, defendant's failure to raise his claim on direct appeal is not dispositive.

Postconviction hearings are also governed by Utah Rule of Civil Procedure 65B(i), which states in relevant part:

(2) ... The complaint shall also state whether or not the judgment of conviction that resulted in the confinement complained of has been reviewed on appeal, and if so, shall identify such appellate proceedings and state the results thereof.

The complaint shall further state that the legality or constitutionality of his commitment or confinement has not already been adjudged in a prior habeas corpus or other similar proceeding; and if the complainant shall have instituted prior similar proceedings in any court, state or federal, within the state of Utah, he shall so state in his complaint, shall attach a copy of any pleading filed in such court by him to his complaint, and shall set forth the reasons for the denial of relief in such other court. In such case, if it is apparent to the court in which the proceeding under this Rule is instituted that the legality or constitutionality of his confinement has already been adjudged in such prior proceedings, the court shall forthwith dismiss such complaint, giving written notice thereof by mail to the complainant, and no further proceedings shall be had on such complaint.

. . . .

(4) All claims of the denial of any of complainant's constitutional rights shall be raised in the postconviction proceeding brought under this Rule and may not be raised in another subsequent proceeding except for good cause shown therein.

■ Even though both of defendant's postconviction proceedings involved similar (but not the same) issues, rule 65B(i) does not prevent our consideration of his claims. First, as discussed above, defendant was apparently unaware that he had been charged with a nonexistent crime. Thus, his claim was not the subject of an appellate proceeding. Importantly, rule 65B(i) has no provision to dismiss or deny a complaint brought on grounds which were or should have been subjects of prior appellate proceedings. It merely requires dismissal of matters which were previously "adjudged" in habeas corpus or postconviction hearings. This suggests that the rule is not intended to prevent a defendant from bringing a postconviction complaint even if he raised or could have raised the issue in prior appellate proceedings. Subsection (2) of 65B(i) outlines the procedure to be followed when determining whether to dismiss a postconviction complaint. It specifies that if the legality or constitutionality of the incarceration in question has been previously adjudicated, then the complaint must be dismissed. By contrast, it only requires that the court be informed of pending postconviction hearings and does not require dismissal until the court is shown that the issues before it have been "adjudged."

■ Subsection (4) merely states that successive postconviction complaints for constitutional claims, as opposed to legal claims, can be raised only where good cause is shown. Defendant's motion to withdraw his guilty plea, prepared pro se, is specifically based upon good cause. Although defendant might have drafted the motion more artfully, his intention was clear. Given the unique circumstances which led to defendant's initial plea, this case appears to fit the good cause exception to rule 65B(i)(4).

The dissent asserts that subsection (4) prohibits the raising of any issue in successive postconviction complaints that might have been raised at a prior time. This is incorrect. As noted, subsection (4) allows

any number of postconviction complaints if good cause is shown. Additionally, subsection (4) is limited by its plain language to constitutional claims.[2] It has no application to nonconstitutionally based legal claims. Finally, the specific procedures in subsection (2) would prevail over the general phrase of admonishment in subsection (4). It would require an unjustified extension of the meaning of 65B(i)(4) to argue that all claims must be raised in prior complaints. Instead, subsection (4) merely illuminates and provides an avenue, through good cause, for raising constitutional claims in subsequent hearings.

■ Second, even though defendant was simultaneously involved in two postconviction hearings, neither had been "adjudged" before the other was heard. The motion for withdrawal of plea was signed June 17, 1985, and filed with the court on July 2, 1985, the same day it was denied. The petition for a writ of habeas corpus in the Third District Court was concluded through stipulation of the parties on June 25, 1985. The stipulation and order were not filed, and the Fourth District Court did not receive official notice until August 23, 1985, when defendant was resentenced by the Fourth District Court. Defendant's resentencing took place subsequent to the Fourth District Court's denial of his motion to withdraw his plea. Because both proceedings took place at virtually the same time, it was impossible for either court to properly dismiss the complaint before it on the ground that the matter had been previously "adjudged" in another court, as required by rule 65B(i)(2).

■ Similarly, rule 65B(i)(4) prohibits constitutional claims from being raised in subsequent proceedings. In this case, defendant raised the issues before either proceeding was concluded. Thus, neither proceeding was subsequent to the other, and both occurred simultaneously. In fact, each court was hearing a somewhat different matter, and neither was finally adjudged so that the second could be dis-

missed pursuant to the language of rule 65B(i). We echo the sentiments of Chief Justice Crockett, who, speaking for a unanimous court, stated:

> It is true that we have repeatedly declared that any claims of error or impropriety should be asserted in the regular procedure provided for on appeals and that, if that is not done, the writ of habeas corpus may not be used as a belated appeal. Nevertheless, howsoever desirable it may be to adhere to the rules, the law should not be so blind and unreasoning that where an injustice has resulted the victim should be without remedy. For that reason, as indicated in the cited cases, the writ should be available in rare cases, where it appears that there is a strong likelihood that there has been such unfairness, or failure to accord due process of law, that it would be wholly unconscionable not to reexamine the conviction.

*Martinez v. Smith,* 602 P.2d 700, 702 (Utah 1979) (footnotes omitted).

The provisions of rule 65B(i) do serve to promote justice. However, its language may at times conflict with the most just result in any given case. As the United States Supreme Court said in a recent decision: " 'In appropriate cases' the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.' " *Murray v. Carrier,* 477 U.S. 478, 496, 106 S.Ct. 2639, 2650, 91 L.Ed.2d 397 (1986) (citations omitted). We do not advocate a wholesale disregard for rule 65B(i) or for the general prohibition against successive postconviction complaints. Instead, where an injustice results and the rule allows, we will permit a cause to be heard.

We will reverse a trial court's decision on a motion to withdraw a guilty plea if the trial court abused its discretion. *State v. Mildenhall,* 747 P.2d 422 (Utah 1987). Defendant's claim herein is that he did not knowingly and voluntarily enter his guilty

---

**2.** Subsection (2) refers to legal or constitutional bases which underscore the difference between subsection (2) and subsection (4).

plea. *See* Utah Code Ann. § 77–35–11(e)(1)–(2) (Supp.1987); *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In *Hammond v. United States*, 528 F.2d 15 (4th Cir.1975), the defendant assumed he could be sentenced for up to 90 years if found guilty at trial. In reality, the governing law allowed him to be sentenced only to a maximum of 55 years. The Court of Appeals reversed the trial court's dismissal of defendant's motion to vacate his sentence and, in so doing, stated:

> [I]n order to plead voluntarily, a defendant must know the direct consequences of his plea, including the actual value of any commitments made to him. Where, as here, counsel's alleged advice, corroborated by the information supplied by the court, grossly exaggerated the benefit to be derived from the pleas of guilty, it would follow that the pleas were not voluntary.

*Id.* at 19;[3] *see also Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The defendant here was charged with a first degree felony, carrying a sentence of five years to life. He agreed to forego his right to a jury trial in return for a reduced conviction and sentence for a second degree felony (carrying a sentence of one to fifteen years). In reality, the offense with which he was charged was punishable as a third degree felony (with a sentence of zero to five years). Thus, defendant appears on the face of the record to have received nothing in return for his guilty plea. Having pleaded guilty to the crime he should have been charged with in the first place, he now claims that he received no reduction in degree or sentence and avoided no risk.

■ To deny defendant relief on the merits, we would have to assume that he willingly bargained to plead guilty, expecting and receiving nothing in return. This assumption is highly speculative and implausible where a plea bargain is involved. The nature of plea bargains requires the exchange of consideration, allowing the

parties involved to reach a mutually desirable agreement. A plea bargain is a contractual relationship in which consideration is passed. *See Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); 2 *Wharton's Criminal Procedure* § 341 (1975). In fact, the remedy for a defendant where the State fails to fulfill its side of the bargain is frequently specific performance. *See* 81 C.J.S. *Specific Performance* § 103 (1977); Annotation, *Supreme Court's Views as to Plea Bargaining and its Effects*, 50 L.Ed.2d 876 (1978). A plea bargain does not involve a situation where a defendant willingly pleads guilty to a crime, neither asking nor expecting anything in return.

The defendant herein apparently received seriously deficient information from all persons involved in his case. He argues that any benefit he might have derived from the bargain was misunderstood. For us to assert that there was no miscalculation would be patently incorrect without a factual record. It would be equally implausible to assume that defendant would have *bargained* to plead guilty expecting nothing in return if the facts are as defendant asserts.

■ Thus, if the record demonstrates an abuse of discretion because defendant's plea was not voluntarily and knowingly made, the decision below should be reversed. Unfortunately, the record now before us is inadequate to allow us to draw a conclusion as to whether defendant demonstrated good cause for withdrawal of his guilty plea. There is no indication of the nature of the evidence and argument in the court below on the motion to withdraw the plea. Indeed, it appears that the trial court may have viewed the resentencing procedure as dispositive of the plea withdrawal motion and denied the same without a hearing. Therefore, we remand this case to the lower court for an evidentiary hearing and factual findings as to whether defendant's original guilty plea was entered knowingly and voluntarily.

STEWART and ZIMMERMAN, JJ., concur.

---

3. The dissent suggests that *Hammond* is not apposite to a discussion of multiple postconviction complaints. We agree. *Hammond* is cited only to demonstrate the validity of defendant's position on the merits of his motion to withdraw his guilty plea.

HALL, Chief Justice (dissenting):

I respectfully dissent. The majority opinion's scope and content are overly broad and expansive. Additionally, defendant does not contend that the claims he raised in his postconviction motion to withdraw his guilty plea were not and/or could not have been raised on direct appeal or as part of his prior habeas corpus complaint and proceeding. Moreover, defendant has not shown and the record does not divulge good cause in view of defendant's procedural default or, considering the fact that defendant's amended sentence resulted from his own stipulation and the granting of his habeas corpus complaint, a fundamental injustice or prejudicial denial of a constitutional right in the entry of defendant's plea.[1]

On February 24, 1984, the Fourth District Court accepted defendant's guilty plea to the crime of attempted sexual abuse of a child. In doing so, the court found that defendant pleaded freely and voluntarily with full knowledge of his rights, with an understanding of the consequences, and without force, threats, or promises of reward. The court also concluded that there was a factual basis for the plea. Defendant was sentenced for the second degree felony on July 20, 1984.[2] No notice of appeal was filed.

On June 17, 1985, defendant submitted a motion to withdraw his guilty plea. This motion was not filed in the Fourth District Court until July 2, 1985. Defendant specifically based his motion on the grounds that his "plea was improperly coerced" and that at the time he entered his plea, the crime to which he was pleading guilty was "punishable by a sentence which was materially less than that to which [he had] been subjected."

The County Attorney's Office filed its response to defendant's motion on June 25, 1985. The State objected to the motion on the grounds that it was untimely and that *defendant's latter claim* and request for resentencing were *already being addressed* by the Third District Court in a prior 1984 habeas corpus proceeding. Also on June 25, 1985, defendant, with benefit of counsel, stipulated, and the Third District Court *ordered* in that proceeding, that defendant should properly be sentenced for committing the third degree felony of attempted sexual abuse of a child. Defendant's complaint for a writ of habeas corpus was thus granted.[3] While defendant's motion to withdraw his guilty plea was subsequently denied by the Fourth District Court on July 2, 1985, a copy of the Third District Court's order was transmitted to the Fourth District Court so that defendant's resentencing could be imposed consistent therewith. Defendant then commenced this appeal, claiming that the Fourth District Court erred in denying his motion to withdraw his guilty plea.

Rule 65B(i)(2), (4) of the Utah Rules of Civil Procedure provides in pertinent part:

1. *See Wells v. Shulsen,* 747 P.2d 1043, 1044 (Utah 1987) (per curiam); *see also infra* notes 6–9 and accompanying text.

2. At the time defendant was charged, application of section 76–4–102(2) (Supp.1988) to the 1983 version of section 76–5–404.1(1)–(2) (amended 1984) classified attempted sexual abuse of a child as a first degree felony. The following excerpt from a June 1985 "Response to Defendant's Motion to Withdraw Plea" explains the amended information:

> On February 9, 1984, plea negotiations were made with the Defendant and his counsel at the preliminary hearing. Under the law then applicable (Sec. 76–5–404.1 and Sec. 76–4–101(2), Utah Criminal Code, 1983) the Defendant's conduct, Sexual Abuse of a Child or Attempted Sexual Abuse of a Child, was only punishable as a first degree felony. Nonetheless, a stipulation was entered into where-

> by at arraignment and sentencing his offense would be labeled Attempted Sexual Abuse of a Child and treated as a second degree felony, in spite of the statute. In the interim, however, the Utah legislature amended § 76–5–404.1 to make Sexual Abuse of a Child a second degree felony and Attempted Sexual Abuse of a Child a third degree felony.

3. A postconviction claim may be rendered moot if the relief requested has been granted. *See Spain v. Stewart,* 639 P.2d 166, 168 (Utah 1981). The habeas corpus complaint and proceeding are not before this Court on appeal. However, the record indicates that the complaint was granted, and in the absence of a record, the regularity and appropriateness of the proceedings below are assumed. *See State v. Robbins,* 709 P.2d 771, 773 (Utah 1985).

(2) The complaint [for postconviction relief] shall also state whether or not the judgment of conviction that resulted in the confinement complained of has been reviewed on appeal, and if so, shall identify such appellate proceedings and state the results thereof.

The complaint shall further state that the legality or constitutionality of his commitment or confinement has not already been adjudged in a prior habeas corpus or other similar proceeding; and *if the complainant shall have instituted prior similar proceedings in any court, state or federal, within the state of Utah, he shall so state in his complaint,* shall attach a copy of any pleading filed in such court by him to his complaint, and shall set forth the reasons for the denial of relief in such other court.   In such case, *if it is apparent to the court in which the proceeding under this rule is instituted that the legality or constitutionality of his confinement has already been adjudged in such prior proceedings, the court shall forthwith dismiss such complaint,* giving written notice thereof by mail to the complainant, *and no further proceedings shall be had on such complaint.*

. . . .

(4) *All claims* of the denial of any of complainant's constitutional rights *shall be raised* in the postconviction proceeding brought under this rule and *may not be raised in another subsequent proceeding except for good cause shown therein.*

(Emphasis added.)   This rule is in harmony with our existing case law and the principle that, *except for good cause shown,* claims which were or could have been raised either on direct appeal or in a prior habeas corpus or postconviction complaint or proceeding will be deemed waived and may not be raised in subsequent complaints or proceedings.[4]

Indeed, most recently in *Wells v. Shulsen,*[5] this Court stated:

Habeas corpus proceedings may be used to attack a judgment of conviction in the event of an obvious injustice or a substantial and prejudicial denial of a constitutional right in the trial of the matter. *On the other hand, the post-conviction relief provided by rule 65B(i) may not be used as a substitute for regular appellate review.*

In *Codianna v. Morris,* 660 P.2d 1101, 1104 (Utah 1983), this Court stated as follows:

[A]llegations of error that could have been but were not raised on appeal from a criminal conviction cannot be raised by habeas corpus or postconviction review, except in unusual circumstances.

---

**4.** *See, e.g., Andrews v. Morris,* 677 P.2d 81, 86 (Utah 1983); *Codianna v. Morris,* 660 P.2d 1101, 1104–05 (Utah 1983); *Andrews v. Morris,* 607 P.2d 816, 820 (Utah), *cert. denied,* 449 U.S. 891, 101 S.Ct. 254, 66 L.Ed.2d 120 (1980); *State v. Boggess,* 601 P.2d 927, 929 (Utah 1979) (citing *Brown v. Turner,* 21 Utah 2d 96, 440 P.2d 968 (1968); *Bryant v. Turner,* 19 Utah 2d 284, 431 P.2d 121 (1967)); *Burleigh v. Turner,* 15 Utah 2d 118, 120, 388 P.2d 412, 414 (1964); *see also Murch v. Mottram,* 409 U.S. 41, 45–46, 93 S.Ct. 71, 34 L.Ed.2d 194 (per curiam), *reh'g denied,* 409 U.S. 1119, 93 S.Ct. 894, 34 L.Ed.2d 704 (1972) (prisoner has no right under federal constitution or habeas corpus statute to insist upon piecemeal collateral attack in view of state statutory provision that petitioners must assert all known postconviction claims in single proceeding); *Thompson v. State,* 496 P.2d 651, 654–56 (Alaska 1972); *State v. Gaffney,* 121 Ariz. 271, 272–73, 589 P.2d 914, 915–16 (Ct.App.1979); *People v. Hubbard,* 184 Colo. 243, 246–47, 519 P.2d 945, 947–48 (1974); *Christopher v. State,* 489 So.2d 22, 24 (Fla.1986); *Robinson v. State,* 493 N.E.2d 765, 767 (Ind.1986); *Schertz v. State,* 380 N.W.2d 404, 412 (Iowa 1985); *Weser v. State,* 224 Kan. 272, 274, 579 P.2d 1214, 1216 (1978); *McEachern v. State,* 456 A.2d 886, 889 (Me.1983); *Commonwealth v. Deeran,* 397 Mass. 136, 138–40, 490 N.E.2d 412, 414–16 (1986); *Futrell v. State,* 667 S.W.2d 404, 405–08 (Mo.1984); *State v. Rust,* 223 Neb. 150, 153–58, 161, 388 N.W.2d 483, 489–91, 493 (1986) (per curiam), *cert. denied,* —— U.S. ——, 107 S.Ct. 1987, 95 L.Ed.2d 826 (1987); *Darnell v. State,* 98 Nev. 518, 520–21, 654 P.2d 1009, 1011 (1982); *Luckett v. Warden,* 91 Nev. 681, 682, 541 P.2d 910, 911, *cert. denied,* 423 U.S. 1077, 96 S.Ct. 864, 47 L.Ed.2d 88 (1976); *State v. Gilliham,* 86 N.M. 439, 440, 524 P.2d 1335, 1336 (1974); *Jones v. State,* 668 P.2d 1170, 1171 (Okla.Crim.1983); *Page v. Cupp,* 78 Or.App. 520, 521–25, 717 P.2d 1183, 1184–85, *review denied,* 301 Or. 338, 722 P.2d 737 (1986); *Commonwealth v. Parker,* 503 Pa. 336, 340, 469 A.2d 582, 584 (1983).

**5.** 747 P.2d 1043 (Utah 1987).

A much-quoted statement of the type of errors that are and are not cognizable by habeas corpus is the following from this Court's unanimous opinion in *Brown v. Turner*, 21 Utah 2d 96, 98–99, 440 P.2d 968, 969 (1968) (Crockett, C.J.):

[Habeas corpus] is an extraordinary remedy which is properly invocable only when the court had no jurisdiction over the person or the offense, or where the requirements of law have been so disregarded that the party is substantially and effectively denied due process of law, or where some such fact is shown that it would be unconscionable not to re-examine the conviction. *If the contention of error is something which is known or should be known to the party at the time the judgment was entered, it must be reviewed in the manner and within the time permitted by regular prescribed procedure, or the judgment becomes final and is not subject to further attack, except in some such unusual circumstance as we have mentioned above.* Were it otherwise, the regular rules of procedure governing appeals and the limitations of time specified therein would be rendered impotent.

. . . .

... Under both federal and state laws, a petitioner in a habeas corpus proceeding must show cause for a procedural default and the resulting prejudice he suffered.[6]

This case, together with rule 65B(i), then, reiterates the rule that a defendant is generally precluded from bringing a postconviction complaint if he raised or could have raised the issue in a prior appellate or postconviction proceeding. The efficacy and importance of such procedural rules are noted by the United States Supreme Court in *Murray v. Carrier:*[7]

A State's procedural rules serve vital purposes at trial, on appeal, and on state collateral attack. The important role of appellate procedural rules is aptly captured by the Court's description in *Reed v. Ross* [468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984)] of the purposes served by the procedural rule at issue there, which required the defendant initially to raise his legal claims on appeal rather than on postconviction review:

"It affords the state courts the opportunity to resolve the issue shortly after trial, while evidence is still available both to assess the defendant's claim and to retry the defendant effectively if he prevails in his appeal. See Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U.Chi.L.Rev. 142, 147 (1970). This type of rule promotes not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case." ...

... "Each State's complement of procedural rules ... channel[s], to the extent possible, the resolution of various types of questions to the stage of the judicial process at which they can be resolved most fairly and efficiently." It is apparent that the frustration of the State's interests that occurs when an appellate procedural rule is broken is not significantly diminished when counsel's breach results from ignorance or inadvertence rather than a deliberate decision, tactical or not, to abstain from raising the claim. Failure to raise a claim on appeal reduces the finality of appellate proceedings, deprives the appellate court of an opportunity to review trial error, and "undercut[s] the State's ability to enforce its procedural rules."[8]

6. *Id.* at 1044 (some emphasis added; citations omitted).

7. 477 U.S. 478, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).

8. *Id.* 477 U.S. at 490–91, 106 S.Ct. at 2647 (citations omitted).

Recognizing that cases may at times involve the issue of alleged injustice, the Court clarified:

[C]ause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim.

. . . .

However, as we also noted in *Engle,* "[i]n appropriate cases" the principles of comity and finality that inform the concepts of cause and prejudice "must yield to the imperative of correcting a fundamentally unjust incarceration." We remain confident that, for the most part, "victims of a fundamental miscarriage of justice will meet the cause-and-prejudice standard." But we do not pretend that this will always be true. Accordingly, we think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default.

... [Additionally,] [t]he ability to raise ineffective assistance [of counsel] claims based in whole or in part on counsel's procedural defaults substantially undercuts any predictions of unremedied manifest injustices. We therefore remain of the view that adherence to the cause and prejudice test "in the conjunctive," will not prevent federal habeas courts from ensuring the fundamental fairness that is the central concern of the writ of habeas corpus.[9]

Turning to the instant case, defendant has not even argued, much less shown, that the claim he raised in his postconviction motion to withdraw his guilty plea could not, with reasonable diligence, have been known and raised on appeal.[10] Also, the fact that defendant brought this motion and that he pursued a habeas corpus proceeding does not, as the majority contends, necessarily support a presumption that defendant was unaware of any basis for appeal. In any event, under our existing rule, it is not sufficient that defendant may have been merely unaware of a basis for appeal, and the fact that defendant may have been unaware prior to sentencing neither explains why his claim was not the subject of an appellate or single postconviction proceeding nor provides a sufficient showing of cause to negate our established rule in such cases.[11] Further, in contrast to the fact that this Court addressed claims in several of the habeas corpus cases cited by the majority, it is critical to note in reference to rule 65B(i)(2), (4) that defendant knew of the change in the law prior to and at the time he filed his initial postconviction complaint and stipulated to the outcome of that proceeding.

In addition, the Fourth District Court did not rule on the motion to withdraw the plea until after the Third District Court had explicitly granted defendant's habeas corpus complaint. Concluding, as the majority does, that the Third District Court's habeas corpus proceeding (resolved June 25) was not "adjudged" prior to the Fourth District Court's ruling on defendant's motion (denied July 2) simply because the Fourth District had not received "official notice" thereof and defendant had not yet been resentenced ignores the rationale underlying the rule and is an exercise in semantics. This is so particularly since the record clearly indicates that the Fourth District knew of the Third District proceeding prior to its denial of defendant's motion to withdraw his plea. Nevertheless, even if the motion to withdraw the plea is viewed as

---

9. *Id.* at 492, 495–96, 106 S.Ct. at 2648, 2650 (citations omitted).

10. *See Wells,* 747 P.2d at 1044.

11. *Cf. Murray,* 477 U.S. at 486, 106 S.Ct. at 2645 ("'Where the basis of a constitutional claim is available, and other defense counsel have per-

ceived and litigated that claim, the demands of comity and finality counsel against labeling alleged unawareness of the objection as a cause for a procedural default'" (quoting *Engle v. Isaac,* 456 U.S. 107, 134, 102 S.Ct. 1558, 1575, 71 L.Ed.2d 783 (1982)).).

having been submitted to the Fourth District Court almost "simultaneously" with the "resolution" of the habeas corpus complaint, this conclusion would itself support the fact that defendant knew the extent of his claims in both complaints and lacked "good cause" in view of rule 65B(i)(4) in not *raising* them in the same proceeding.

In this regard, the quoted provisions of rule 65B(i) serve to protect the interest of justice by promoting the accuracy, efficiency, and finality of judicial decisions.[12] In implementing this purpose, the rule does not impose a limitation requiring that an initial postconviction proceeding be heard, decided, or concluded sufficiently early in order to render subsequent complaints and proceedings impotent. Rather, the rule in part both mandates that trial courts be informed of prior and pending proceedings and prohibits, except for good cause shown, even the *raising* of postconviction claims in multiple complaints and proceedings.

As such, the facts noted above evidence that at least one week before defendant's motion herein was denied, the Fourth District Court was explicitly informed of defendant's pending Third District proceeding and the fact that defendant had raised at least one identical claim therein. Based upon rule 65B(i), the Fourth District Court was not required to wait for a decision by the Third District before properly determining that defendant's conviction was "not subject to further attack."[13] Also, although the record indicates that the Fourth District "denied" defendant's motion, to presume that the court did not treat the claim as having been decided and/or waived irrespective of the resentencing procedure would be an assumption in deference of our standard presuming the regularity of the proceeding in the presence of a silent record.[14] In any event, based upon these facts, our existing case law, the analysis above, and the fact that rule 65B(i)(4) specifically prohibits defendants from *raising* claims in multiple postconviction proceedings, the trial court appropriately denied defendant's requested relief.

Finally, in contrast to the rationale of the majority, the crucial issue here does not concern plea bargains in general or what defendant *presumably* may or may not have been willing to do, whether he received a "benefit," or whether defendant agreed or would have agreed to plead guilty to attempted sexual abuse of a child *only* if faced with a first degree felony charge.[15] Instead, this case, unlike *Hammond v. United States*[16] cited by the majority, involves multiple postconviction proceedings, procedural default without cause, and a prior stipulation by defendant to his requested relief. While it is perhaps unfortunate that all concerned were not aware of the statutory change at the time defendant was originally charged, to remand for further proceedings is to ignore the facts of this case, as well as the plain language,[17] rationale, and purpose of rule 65B(i).[18]

This opinion chooses to forego answering the numerous arguments and charges postulated by the majority. Nevertheless, "the meaning and intent of this opinion should not be judged by the content of the [majority]," as we do not acquiesce in its

---

12. *See Murray,* 477 U.S. at 491, 106 S.Ct. at 2647.

13. *Wells,* 747 P.2d at 1044.

14. *See Robbins,* 709 P.2d at 773; *see also supra* note 3.

15. In view of the record and absent further facts surrounding defendant's conduct involving the child in this case, it is a disservice to presume that defendant pleaded guilty to the crime he should have been charged with in the first place.

16. 528 F.2d 15 (4th Cir.1975).

17. *See* Utah R.Civ.P. 65B(i)(2), (4).

18. *See generally Murch,* 409 U.S. at 46, 93 S.Ct. at 73 ("[I]f a subjective determination not to waive or to abandon a claim were sufficient to preclude a finding of a deliberate bypass of orderly state procedures, constitutionally valid procedural requirements, such as those contained in the … statute requiring the joining of all bases for attack in one proceeding, would be utterly meaningless.").

interpretation hereof.[19]

HOWE, Associate C.J., concurs in the dissenting opinion of HALL, C.J.

---

**19.** *Halladay v. Cluff,* 685 P.2d 500, 507–08 n. 7    (Utah 1984).