**Billy NASH, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 3-581A119.**

Court of Appeals of Indiana, Fourth District.

Dec. 30, 1981.

---

Harriette Bailey Conn, Public Defender, Paul Levy, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen G. Lucas, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Presiding Judge.

Billy Nash appeals the trial court's denial of his motion for post-conviction relief under Ind.Rules of Procedure, Post-Conviction Rule 1. Nash's petition primarily alleged his guilty pleas to 19 counts of Theft [1] were not made knowingly, intelligently and voluntarily and that the trial court failed to determine if such pleas were the result of any promises or threats. We find the record reveals the trial court did not address Nash and determine whether any promises, force, or threats were used to obtain his pleas, in violation of Ind.Code 35–4.1–1–4(a). We find this failure particularly significant in light of the prosecutor's erroneous representations in plea negotiations that Nash was subject to eight habitual offender counts, for which there was no legal basis. We therefore find the guilty pleas were invalid, and the trial court's denial of Nash's petition is reversed.

### FACTS

Nash was arrested and charged with the theft of 21 automobiles as a result of a "sting" operation conducted by the Indiana State Police in Hammond, Indiana. Specifically, Nash was first charged on January 19, 1978 by Information with one count of theft; on September 12, 1978 he was charged in six separate causes with a total of 17 counts of theft; and on September 21, 1978 he was charged in two separate causes with a total of three theft counts. Two counts were later dismissed, on the state's motion, as duplicitous and without sufficient evidence. Nash therefore remained charged in nine separate causes with 19 thefts which formed the objects of his guilty pleas.

The focus of the current dispute, however, is eight separate habitual offender counts,[2] one appended to each of the last eight causes mentioned above. In each of

---

1. Ind.Code 35–43–4–2, a Class D felony.

2. Ind.Code 35–50–2–8 provides:

   "(a) The state may seek to have a person sentenced as an habitual offender for any felony by alleging, on a page separate from the rest of the charging instrument, that the person has accumulated two (2) prior unrelated felony convictions. A person who is found to be an habitual offender shall be imprisoned for an additional fixed term of thirty (30) years, to be added to the fixed term of imprisonment imposed under section 3, 4, 5, 6 or 7 of this chapter.

   (b) After he has been convicted and sentenced for a felony committed after sentencing for a prior unrelated felony conviction, a person has accumulated two (2) prior unrelated felony convictions. However, a conviction does not count, for purposes of this subsection, if:

   (1) it has been set aside; or
   (2) it is one for which the person has been pardoned."

the eight counts the state alleged Nash had been convicted and sentenced for Theft and Automobile Banditry in December of 1975. We first note Nash was not subject to the habitual offender charges since his earlier felonies were related and obviously the second had not been committed after he had been sentenced for the first. Moreover, in March of 1978, this Court by memorandum opinion vacated Nash's auto banditry conviction which was the law of the case in the current proceedings. On remand the trial court judge who was the same judge presiding over the proceedings in the instant case, sent notice of this Court's opinion to the Indiana Department of Corrections and the warden of the Indiana State Prison in Michigan City. Nash, however, had already been released from confinement and was apparently not otherwise informed that the auto banditry conviction had been set aside.

On March 23, 1979, Nash pled guilty to 19 counts of theft pursuant to a recommendation from the prosecutor that Nash be sentenced to a maximum of 14 years for all counts. The trial court accepted the recommendation and Nash was placed in the custody of the Department of Corrections. While reviewing his case with a prison counselor, he first became aware that one of his two prior felony convictions had been vacated by this Court. On December 5, 1979 Nash filed a pro se petition for post-conviction relief, which was later amended, alleging his guilty pleas were void.

The facts pertinent to the petition center on the state's habitual charges against Nash although his second felony conviction had been vacated six months before the Informations were filed. More importantly, as the uncontradicted testimony at the post-conviction relief hearing amply demonstrates, the habitual offender counts constituted a bargaining point in the negotiations for a sentencing recommendation with the prosecutor. Specifically, at Nash's post-conviction relief hearing, Nash's former counsel testified he was unaware that one of the underlying felonies had been vacated, and on January 12, 1979 the prosecutor offered a "plea negotiation" as follows:

"It had not been written out, but the agreement that they would offer a plea on all theft charges and a term of fourteen (14) years flat to be worked out by way of some type of a consecutive and concurrent serving of time. *And the habitual charges would be dismissed.* And my notes show that that agreement was struck as early as January 12, 1979. And I talked with Mr. Nash about that on January 17, 1979. My notes show that I spoke with him. I may have even spoke to him earlier than that. But I do have notes that state that I spoke to him on January 17th, concerning the plea agreement." (Emphasis added.)

There is additional evidence in the record that Nash's plea was *also* motivated by "the amount of time that might be tacked on due to the extensive number of theft charges" and because of Nash's "concern for the administration that was coming in. And their publicity position of no plea bargains." Nash's attorney also communicated his opinion to Nash that the habitual charges were vulnerable to attack, but the attorney testified that he was not "confident" of the outcome and "saw no need to attack them, since they were going to be dismissed by the plea agreement or sentence recommendation."

The record therefore demonstrates Nash's guilty pleas were the product of several considerations. It is uncontradicted, however, that the pending habitual offender charges constituted not only a partial motivation for the pleas, but an express portion of the agreement between Nash and the prosecutor.

The habitual offender counts were dismissed on March 20, 1979 three days before Nash's guilty plea hearing. However, at that hearing *and in Nash's presence*, the trial court queried the prosecutor on the disposition of the habitual offender charges, to which the prosecutor responded: "Habitual Offender should now be nolle prossed." At the hearing on his petition for post-conviction relief, Nash's former attorney testified:

"As you know, a lot of this business is hinged upon what you call plea agreement. A lot of it is not necessarily put into writing. My experience is that sometimes they are dismissed before or after. I can't recollect when, in fact, the habituals were dismissed in this case. *All I knew, that it was promised to me. And I had no doubt in my mind. . . .* I can't recall ever telling [Nash] the habitual charges were dismissed. *I can recall telling him that was part of the agreement, that they would be dismissed.* (Emphasis added.)

The *written* sentencing recommendation, submitted by the prosecutor and accepted by the trial court, made no mention of the habitual offender counts, but only recited a recommendation of a 14 year sentence in exchange for guilty pleas on all 19 theft counts.

At the conclusion of the post-conviction relief hearing, the trial court denied the petition and issued findings of fact, of which the pertinent portions are as follows:

"1. Defendant's Petition applied to all cases wherein total sentences equaled fourteen years.

. . . .

3. The Petitioner was properly advised and aware of the number and nature of the charges pending against him as a result of conferences with his Attorney and the advisement of the Court. (See Arraignment and Guilty Plea, and Sentencing Transcripts.)

4. Petitioner's Attorney consulted with and properly counselled [sic] the Petitioner concerning the charges including that of Habitual Offinder [sic]. (See Arraingment [sic] and Plea and Sentencing Transcripts).

5. Petitioner was aware that the Habitual Offender Count was dropped and this was not a material consideration in his tendered plea. (See Guilty Plea and Sentencing Transcripts: Page two, line twenty and following page 3, entirely.) [3]

6. Petitioner's plea to fourteen uears [sic], was made freely and knowingly as the result of a Sentence Recommendation filed by the State and accepted by the Court which allowed the Petitioner to avoid the real possibiliity [sic] of consecutive four-year sentences on each theft count contained in nine cases.

7. The voluntariness and the motives of the Defendant in tendering his plea herein are clearly reflected in the plea and sentencing transcript and in compliance with IC 35–4.1–1–4.

. . . ."

Nash raises several issues in his motion to correct errors. Given our disposition, however, we need only determine whether the trial court failed to determine the voluntariness of Nash's plea.

## DECISION

We first note that the petitioner must prove his allegations by a preponderance of the evidence in the trial court. *Mosley v. State,* (1979) Ind., 390 N.E.2d 659; *Davis v. State,* (1981) Ind.App., 418 N.E.2d 256. Furthermore we may reverse the trial court's denial of a petition for post-conviction relief only where the evidence is without conflict and leads unerringly to a conclusion contrary to the one reached by the trial court. *Mosley v. State, supra; Davis v. State, supra.* In the instant case, Nash contends the trial court failed to comply with IC 35–4.1–1–4(a) which provides in pertinent part:

"Determining voluntariness and factual basis of plea. (a) The court shall not accept a plea of guilty without first personally addressing the defendant and determining that the plea is voluntary. *The court shall address the defendant and determine whether any promises, force or threats were used to obtain the plea.*" (Emphasis added.)

---

3. The court is referring to that point in the guilty plea and sentencing hearing when the prosecutor cryptically informed the court that the "Habitual Offender should *now* be nolle prossed." (Emphasis added.)

The state does not dispute that the trial court did not address Nash at any point in the proceedings and inquire whether the plea was induced by any promises or threats. Additionally, the state acknowledges several cases where the Indiana Courts have required strict compliance with the statute involved herein. Nevertheless, the state urges a more liberal reading of the statute and invites us to examine the entire record. We must decline the state's invitation.

This District has previously addressed the precise question in *Collins v. State,* (1979) Ind.App., 394 N.E.2d 211 wherein the defendant sought withdrawal of a guilty plea originally made pursuant to a plea agreement. At the guilty plea hearing the trial court, however, did not ask Collins if promises had been used to obtain his plea. Although other deficiencies existed, Judge Chipman, writing for a unanimous court, found this latter failure alone required reversal:

"In *Watson v. State,* (1973) 261 Ind. 97, 300 N.E.2d 354, our Supreme Court discussed the highly sensitive role promises by police officers and prosecutors play in plea bargain agreements, and said 'the trial judge ... should ... make every effort to ascertain whether or not such promises have, in fact, been made....' *Id.,* 300 N.E.2d at 355. *See Dube v. State,* (1971) 257 Ind. 398, 275 N.E.2d 7; *Gibson v. State,* (1974) 162 Ind.App. 337, 319 N.E.2d 661. By failing to ask Collins if his plea was made in response to promises by the police or prosecutor, the court failed to comply with both the Supreme Court's *Watson* decision and the mandates of Ind.Code 35–4.1–1–4(a). This alone requires our reversal."

*Id.* at 214. *See also Brunson v. State,* (1979) Ind.App., 394 N.E.2d 229. Moreover, our Supreme Court has recently adopted a strict reading of a companion statute, Ind. Code 35–4.1–1–3 in *German v. State,* (1981) Ind., 428 N.E.2d 234 where a defendant pled guilty pursuant to a plea agreement, but the trial court's failure to personally advise the defendant on an item in the statute resulted in reversal. (overruling *Neeley v. State,* (1978) Ind., 382 N.E.2d 714, a case cited here by the state).

■ We adhere to the rule that the record must affirmatively show compliance with each item enumerated in the statute. *E.g., Collins v. State, supra.* Even if we adopt the state's proposal and search the record as a whole to determine whether Nash's plea was voluntarily entered, we find no colloquy or documents which would arguably have supported the trial court's determination at the post-conviction hearing that Nash's plea was not influenced in part by the habitual criminal charges. It is uncontradicted that their dismissal was *part* of the negotiations. The only possible evidence on which the state could rely was the dismissal of the habitual criminal charges three days before the guilty plea hearing. We find the time of dismissal irrelevant since the dismissal was part of the agreement.[4] The trial court's failure to address Nash with a view towards determining whether his pleas were induced by promises requires reversal.

Our strict reading of IC 35–4.1–1–4 is not motivated by a concern for form over substance, as the state contends in their brief. The statute is designed to protect a defendant from precisely the type of situation involved in this case, as revealed by the testimony at the hearing for post-conviction relief. As demonstrated by Nash and alleged in his petition, it appears his pleas were partly based upon the prosecution's threats to pursue habitual offender counts which were without any legal basis. The state does not dispute, and the testimony is uncontradicted, that the threat of such charges provided an inducement for Nash's plea and that their dismissal was an express portion of the negotiations with the prosecutor. It is also undisputed that there was

---

4. As noted earlier Nash's counsel testified the dismissal of the habitual criminal charges was a part of the plea negotiations in January of 1979, three months before the guilty plea hearing.

no legal basis for the habitual offender charges.[5]

■ It is not unlawful coercion to use the threat of an habitual charge to induce a defendant to accept a plea bargain. *Bordenkircher v. Hayes,* (1978) 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604; *Holmes v. State,* (1980) Ind., 398 N.E.2d 1279. *Davis v. State, supra.* As emphasized in several cases, however, there must be a *legitimate basis* for such a charge. *Id.* at 259. *Howard v. State,* (1978) 268 Ind. 589, 377 N.E.2d 628, 629, *cert. denied* 439 U.S. 1049, 99 S.Ct. 727, 58 L.Ed.2d 708; *Holmes v. State, supra* at 1280.

This latter qualification was fully explained in *Munger v. State,* (1981) Ind.App., 420 N.E.2d 1380 where Munger contended his guilty plea was induced by the prosecutor's unwarranted threat to file an habitual offender charge. Quoting *Lassiter v. Turner,* (4th Cir. 1970) 423 F.2d 897, 900 *cert. denied* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90, this Court explained:

> " 'We do not attempt to define every instance in which a promise or inducement which affects a guilty plea is permissible or is proscribed. But we have no difficulty in concluding that *a threat by a prosecutor to do what the law will not permit, if it motivates a defendant ignorant of the impossibility, renders the plea involuntary.* In such a circumstance, the representation takes on the character of a trick or an artifice inducing the plea, even though the prosecutor is also unaware of its forbidden character. In effect, the defendant is deceived into making the plea, and the deception prevents his act from being a true act of volition.' " (Emphasis added.)

*Munger v. State, supra* at 1387–88. In *Munger,* however, there was no evidence indicating whether the prosecutor had communicated such a threat to either Munger or his attorney. Since Munger therefore

failed in his burden of proof, this Court upheld the voluntariness of his plea.

In the instant case, there is ample uncontradicted evidence that the prosecutor bargained with Nash's attorney to drop the habitual offender counts in return for Nash's guilty pleas. This case is therefore virtually identical to several Michigan cases where such bargains were found illusory and resulted in invalidation of guilty pleas. For example, in *People v. Johnson,* (1978) 86 Mich.App. 77, 272 N.W.2d 200, a defendant's plea was based in part on the prosecutor's promise to forego filing an habitual offender information. It appeared from the record that Johnson was not subject to such prosecution. The Court of Appeals of Michigan remanded the cause to determine whether Johnson had been convicted of a prior felony, since

> "[t]he accused must be in fact a potential subject of habitual offender supplementation if this factor is to play a part in the plea negotiations. If the plea is induced by a promise to forego a recidivist proceeding, when no such proceeding would be warranted, the defendant is *per se* misinformed as to the benefit of his plea and the bargain is illusory. (Citations omitted)."

*Id.* at 201. A similar set of circumstances resulted in the reversal of a defendant's convictions in *People v. Smith,* (1979) 90 Mich.App. 572, 282 N.W.2d 399. In *People v. Sanders,* (1979) 91 Mich.App. 737, 283 N.W.2d 841, Michigan also allowed withdrawal of a guilty plea where the habitual offender counts were facially valid, but the underlying felony convictions were possibly subject to constitutional challenge for failure to advise Smith of the right to remain silent before pleading guilty to those offenses. The appellate court remanded this latter issue for a determination by the trial court and held that a finding in favor of Sanders would invalidate the plea bargain as illusory.

---

**5.** The state, only disputes the *degree* to which the habitual offender charges influenced Nash's decision to plead guilty.

These cases find their origin in *Hammond v. United States*, (4th Cir. 1975) 528 F.2d 15 where the defendant was told his conviction after a trial might result in a sentence 35 to 40 years more than the law actually allowed. The *Hammond* Court ruled the defendant was entitled to a hearing on the matter, noting: "This is not to say, of course, that every item of misinformation which counsel may impart vitiates the voluntariness of a plea. Each case must depend largely on its own facts." *Id.* at 18. In remanding, the Court noted Hammond was a "relatively young man" who may have been coerced into pleading guilty when facing such a substantial sentence.

In the instant case, Nash was a 30 year old man facing a possibility of a substantial amount of time being tacked on to his sentence by virtue of the improper habitual offender counts. Even if we accept the proposition that this was not the "main" motivation for his guilty plea, the uncontradicted testimony leads unerringly to the conclusion that it played a significant part in the plea negotiations and therefore rendered the bargain illusory. Had the trial court complied with IC 35–4.1–1–4(a) and addressed Nash concerning any promises or threats which might have induced his plea, the substantial problem encountered in this case may well have been avoided. The trial court's failure was not merely technical, but resulted in a denial of Nash's substantive rights.

Reversed.

CONOVER and YOUNG, JJ., concur.