IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs November 29, 2005

## JAMES LEATH v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Knox County**
**No. 46869     Mary Beth Leibowitz, Judge**

———————————

**No. E2004-02708-CCA-R3-PC - Filed December 28, 2005**

———————————

The petitioner, James Leath, appeals the denial of his petition for post-conviction relief. The single issue presented for review is whether the petitioner was denied the effective assistance of counsel at trial. The judgment is reversed and the cause is remanded with instructions.

**Tenn. R. App. P. 3; Judgment of the Trial Court is Reversed and Remanded**

GARY R. WADE, P.J., delivered the opinion of the court, in which JOSEPH M. TIPTON and THOMAS T. WOODALL, JJ., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee (on appeal), and Timothy E. Irwin and Larry Churchwell, Knoxville, Tennessee (at trial), for the appellant, James Leath.

Paul G. Summers, Attorney General & Reporter; Leslie Price, Assistant Attorney General; and Kevin Allen, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On October 26, 1988, the petitioner was convicted of three counts of aggravated rape. The trial court imposed an effective sentence of life plus forty years. This court affirmed on direct appeal. State v. James Leath, No. 1238 (Tenn. Crim. App., at Knoxville, Nov. 21, 1989). The convictions were based upon allegations that the petitioner had forced his twelve-year-old nephew to submit to anal intercourse on three separate occasions within a one-week period.

On March 24, 1992, the petitioner filed a petition for post-conviction relief alleging that he had been denied the effective assistance of counsel. The petitioner specifically asserted that his trial counsel had failed to interview potential witnesses, had failed to make timely objections, had failed to advise of a potentially enhanced sentence, and had lost or misplaced an exculpatory recorded statement by the victim.

The petitioner also alleged that the jury was improperly assembled and that one juror had a close friendship with the District Attorney General. He asserted that the evidence did not support the verdict, that there was no medical evidence corroborating the rape, that the victim's testimony was contradictory, and that the trial court erroneously admitted "fresh complaint" testimony and improperly allowed the state to bolster the credibility of a witness. The petitioner also contended that the trial court failed to charge lesser included offenses, and erroneously denied a request for a continuance. He accused the state of prosecutorial misconduct by improper closing argument.

In 1997, counsel was appointed to represent the petitioner in the post-conviction proceeding and the state filed an answer. Because of the unavailability of trial counsel, Cecil Settlemire, as a witness, the petitioner asked for and received a continuance of the initial hearing. In 2002, trial counsel, who described himself as an acquaintance of the original post-conviction judge, filed a motion seeking recusal because of the possible "appearance of impropriety." At the same time, trial counsel filed a motion seeking the recusal of the District Attorney General, Randall Nichols, who had presided as judge in the trial of the case in 1988. Trial counsel expressed a fear of personal prejudice towards him by the District Attorney. He also submitted that the District Attorney might be called as a witness in the case. Subsequently, post-conviction counsel filed a separate motion to disqualify the entire Knox County District Attorney General's Office from participating in the proceeding.

The case was transferred by Judge Richard Baumgartner from Division I of the Criminal Court of Knox County to Division III. Afterward, Judge Mary Beth Leibowitz denied the motions seeking the disqualification of the District Attorney General's Office.

On September 3, 2002, the petitioner filed an amendment to the petition reasserting his initial grounds and making additional allegations:

> Upon reflection it is now clear to me that my trial attorney was suffering from delusions, mental illness, and great stress and depression during my trial. He has since resigned his license. Because of his mental incompetence, he was ineffective and unable to adequately represent my interest at my trial. Specifically he lost evidence, failed to contact witnesses in a timely fashion, argued an unreasonable theory of defense, failed to prepare me as a witness, or make me aware of options or enhancing factors prior to trial, and generally failed as my advocate due to mental illness.

Later, Attorney Settlemire failed to appear as a witness at the evidentiary hearing. A motion to continue by the petitioner was granted and a futile effort was made to serve him with a subpoena. Later, it was established that Attorney Settlemire had indeed resigned his law license and could not be produced as a witness.

On August 4, 2004, the post-conviction court conducted the evidentiary hearing. The petitioner testified that his trial counsel was appointed at the time of his arraignment in the criminal

court.  He claimed that he met with trial counsel for only three or four minutes on that date, met with him for ten minutes about two weeks later, and had his third and final meeting with him for approximately five minutes on the night before the trial.  The petitioner contended that at the last meeting, someone representing the District Attorney's office communicated an offer of a twenty-year sentence in exchange for a guilty plea.  He asserted that he had informed his trial counsel about Debbie Arnold, a potential character witness, and Billy Smith, who was both a character witness and a potential alibi witness.  He claimed that each was unable to make arrangements to testify because they were not timely notified of the trial date.  He testified that his counsel had failed to subpoena either of the two witnesses for trial.  The petitioner, who confirmed that he had a different attorney prior to his preliminary hearing and acknowledged that he had waived the hearing in exchange for a tape-recorded statement by the victim to a Department of Human Services worker, claimed that he listened to the tape with his counsel, who eventually lost it.

The petitioner contended that he and his trial counsel got into an argument on the night before his trial over the tape and the lack of preparation.  He contended that he had asked his trial counsel to seek a continuance of the trial and that trial counsel had failed to do so.  The petitioner, who qualified as a Range II offender and was on parole at the time of these offenses, also testified that his trial counsel failed to inform him that he faced life sentences and possible consecutive sentencing.  He contended that the first discussion about the possible range of his sentences took place either "during the trial or after the trial."  The petitioner insisted that it was his understanding that the maximum possible sentence was twenty years, explaining that was the reason he really didn't consider the state's offer to plea bargain.  He recalled that when he expressed concern to his trial counsel about going to trial without either of his two witnesses or the tape recording of the victim's statement, trial counsel responded that "he had it under control."  The petitioner explained that he simply "took his word at it."  He acknowledged that he had listened to the tape the night before trial and that his primary complaint was that it had not been played for the jury.  He alleged that his trial counsel was optimistic about a favorable result at trial.

On cross-examination, the petitioner admitted that he had been convicted in 1983 for the aggravated rape of his daughter, had received a sentence of twenty years, and was on parole from that sentence at the time of the offenses at issue in this case.  He conceded that he had a rape charge involving another male victim pending at the time of his trial on the subject convictions.  The petitioner acknowledged that his defense at trial on these charges was that he did not commit the rapes.  He also admitted that through the efforts of his trial counsel, he had been offered a mental evaluation by the Helen Ross McNabb Center in Knoxville but had rejected the offer.

The petitioner stated that his trial counsel was aware of the contents of the tape and that the victim, during his testimony, admitted that he had initially denied penetration, the essence of the tape's content.  When pressed about what Debbie Arnold might have said at trial, the petitioner answered, "I'm not exactly sure what she was going to say, but she . . . was going to get up there as a witness.  We had known each other for a couple of months."  He acknowledged that Ms. Arnold was aware of his prior conviction.  The petitioner stated that he had met Billy Smith, his other

potential witness, in prison. He stated that as a part of the requirements of his parole, he lived and worked for Smith after his release from custody.

By agreement, an affidavit of Debbie Arnold was submitted as evidence. In her sworn statement, Ms. Arnold confirmed that she had met with the petitioner through her Christian ministry service and recalled having left a message with trial counsel's secretary at the petitioner's request. She stated that she called a second time, talked to the petitioner's trial counsel, and informed him of his client's concerns about the lack of communication.

It was established that the victim, in his initial statement, denied that he had been sexually penetrated by the petitioner. The record indicates that sometime later, the victim confirmed that there had been penetration on each of the three occasions and attributed his original untruthfulness to embarrassment.

Beth Riley, post-conviction counsel's receptionist, testified that as the custodian of the records in her law office, she had received an audiotape from trial counsel after the filing of the post-conviction petition. She stated that after listening to the tape, she determined that there was nothing on it.

David C. Creekmore, a former General Sessions Judge in Knox County, testified that he was practicing law in 1988 and knew trial counsel. He stated that during that time, trial counsel was "sometimes inappropriately dressed for an attorney and did not make a lot of sense." He recalled that while he sat as General Sessions Judge as late as 1986, some two years before the petitioner's trial, trial counsel often made arguments in unrelated civil cases that "bore no relationship to the matter at hand." Judge Creekmore also remembered an incident when trial counsel came to his office and stated that he was "having problems." He described him as not rational, unkempt, needing a bath, and "jump[ing] from one subject to another."

Jeffrey Blevins of the Knox County District Attorney General's Office testified that he was assigned to prosecute the petitioner on the three rape charges. He confirmed that at the time of the trial, there was a separate indictment pending against the petitioner for the rape of another individual. General Blevins recalled that the petitioner had been on parole for his 1983 conviction only two or three months before the charges were filed in this case. He remembered having met with trial counsel regarding discovery issues, particularly those pertaining to the records of the Department of Human Services. He stated that trial counsel "filed a bunch of motions" and later had a hearing on a motion to compel discovery. General Blevins recalled trial counsel having sought a psychiatric evaluation of the petitioner, contested by the state, which trial counsel "won . . . and the judge put down an order for evaluation." General Blevins stated that the evaluation never took place because the petitioner refused to cooperate. He recalled that he communicated an offer of a sentence in exchange for a guilty plea to trial counsel who answered that he would discuss it with his client. He specifically denied having gone to the jail on the night before the trial or having directly communicated an offer of a plea agreement to the petitioner, explaining that "in twenty-three years of prosecuting I have never done that." He emphatically asserted that he had never spoken directly

-4-

to the petitioner. General Blevins stated that trial counsel was not incoherent or irrational during any of his dealings, explaining, "He represented his client strongly. I mean he did what any defense lawyer should have done." The assistant district attorney specifically recalled that during the course of trial, trial counsel had courteously and yet effectively cross-examined the child victim, establishing that the victim had at first informed the authorities that there had been no penetration. According to General Blevins, trial counsel was effective because he "got the child to admit . . . that he said that there was no penetration" during that initial discussion with investigators. He specifically recalled that trial counsel correctly pointed out that there was no corroborating physical evidence of the assaults even though there had been a medical examination of the victim. General Blevins also recalled that trial counsel, whose defense theory was that the petitioner had not committed any of the three assaults, effectively argued that it would have been a physical impossibility for the rapes to have taken place without some physical pain to the victim. It was his recollection that trial counsel was able to get the victim to admit on cross-examination that he suffered no physical pain during the incidents. During General Blevins's testimony, the state entered a copy of the pre-sentence report, prepared after the trial, wherein the petitioner had stated that "he was displeased with his court attorney's performance because he would not agree to call willing witnesses to corroborate his story about his incestuous family history or other points he considered to be important." General Blevins characterized trial counsel's representation as follows:

> He represented his client vigorously. He was a very competent attorney, at least as competent as any other attorney that I've ever had occasion to be on the other side of the courtroom from.

When asked about any irrational behavior, General Blevins answered that he had "absolutely not" seen any. In particular, he complimented trial counsel for having proposed an innovative accomplice theory suggesting that the state had an obligation to corroborate the victim's testimony with physical evidence. General Blevins testified that trial counsel was not successful, however, in persuading the trial court that this legal argument had merit.

On cross-examination, General Blevins acknowledged that he had, in fact, actually made plea offers to defense attorneys in the presence of their clients and was less certain if he had made such an offer in this case or not. He stated that it was possible that he would have made a twenty-year offer in this case. General Blevins conceded that it would have been important for the petitioner to know the maximum possible sentence in order to evaluate the offer.

At the conclusion of the hearing, the post-conviction court filed a written memorandum denying post-conviction relief. See Tenn. Code Ann. § 40-30-118 (1990) ("Upon the final disposition of every petition, the court shall enter a final order . . . and shall state the findings of fact and conclusions of law with regard to each such ground."). After reciting the testimony by the various witnesses, the trial court observed that the petitioner had been on parole for two or three months when charged with the three counts of rape. It determined that the petitioner was a Range II offender because of his prior criminal record and otherwise ruled as follows:

While it is extremely troubling . . . that Mr. Settlemire's mental instability has become increasingly apparent over the course of this post conviction hearing and that there was some proof within the post conviction hearing that during these periods of time Mr. Settlemire did suffer from some mental disability[,] there is little proof in the record that Mr. Settlemire failed to understand his case or that he did not attempt to provide Mr. Leath with a complete defense. Mr. Creekmore's opinion did not involve the same time frame [of] this case and Mr. Cree[k]more while [enlightening] as to Mr. Settlemire's difficulties[,] did not assist the Court as to whether or not the defense met the [professional] standards [of performance]. Mr. Blevins indicates that he had many conversations with Mr. Settlemire about this case and that Mr. Settlemire did not appear to him to be mentally unstable or incompetent, and that they worked on the case together for [quite] some time. The Court can only conclude that at least at the time of trial[,] Mr. Settlemire was competent and represented Mr. Leath under difficult circumstances to the standards set by <u>Strickland v. Washington</u> and <u>Baxter v. Rose</u> . . . .

In this appeal, the petitioner argues that he is entitled to relief because his trial counsel failed to call possible character and alibi witnesses. He also contends that because there was uncontroverted testimony that his trial counsel failed to advise him of the potential sentences for the three crimes, thereby having an adverse effect upon his decision as to whether to accept the state's offer,[1] he was denied the effective assistance of counsel.

Initially, under the version of the Post-Conviction Procedure Act in effect at the time of the filing of this petition, the petitioner bears the burden of proving the allegations in the petition by a preponderance of the evidence rather than by the clear and convincing standard established by the 1995 amendment. <u>See</u> <u>Clenny v. State</u>, 576 S.W.2d 12, 14 (Tenn. Crim. App. 1978). When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, he must first establish that the services rendered or the advice given were below "the range of competence demanded of attorneys in criminal cases." <u>Baxter v. Rose</u>, 523 S.W.2d 930, 936 (Tenn. 1975). Second, he must show that the deficiencies "actually had an adverse effect on the defense." <u>Strickland v. Washington</u>, 466 U.S. 668, 693 (1984). Should the petitioner fail to establish either factor, he is not entitled to relief. Our supreme court described the standard of review as follows:

Because a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the defendant makes an insufficient showing of one component.

---

[1]Although the record is not entirely clear whether the state offered a twenty-year sentence or a twenty-five-year sentence, most of the testimony from the evidentiary hearing suggests a twenty-year offer. The difference in length of the proposed sentence, however, has no effect on our analysis.

Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

On claims of ineffective assistance of counsel, the petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. Adkins v. State, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Claims of ineffective assistance of counsel are regarded as mixed questions of law and fact. State v. Honeycutt, 54 S.W.3d 762, 766-67 (Tenn. 2001); State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). On appeal, the findings of fact made by the post-conviction court are conclusive and will not be disturbed unless the evidence contained in the record preponderates against them. Brooks v. State, 756 S.W.2d 288, 289 (Tenn. Crim. App. 1988). The credibility of the witnesses and the weight and value to be afforded their testimony are questions to be resolved by the trial court. Bates v. State, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). When reviewing the application of law to those factual findings, however, our review is de novo, and the trial court's conclusions of law are given no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457-58 (Tenn. 2001); see also State v. England, 19 S.W.3d 762, 766 (Tenn. 2000).

I

Initially, the petitioner argues that his trial counsel's failure to call Debbie Arnold as a character witness and Billy Smith as either a character or alibi witness or both qualifies as ineffective assistance of counsel. He argues that there is a reasonable probability that the testimony of these two witnesses would have brought about a different result, either an outright acquittal or a conviction on lesser charges. See Brimmer v. State, 29 S.W.3d 497, 508-09 (Tenn. Crim. App. 1998).

Although an affidavit by Debbie Arnold was introduced as stipulated evidence, neither of the two witnesses testified at the evidentiary hearing. The affidavit establishes that Ms. Arnold would have said nothing more about the petitioner's character than that she was acquainted with him. In our view, that testimony would not have been helpful. Moreover, any testimony that either of the two witnesses might have provided beyond the contents of the affidavit of Ms. Arnold was not offered at the evidentiary hearing. Generally, it is incumbent upon the petitioner to produce any witnesses at the evidentiary hearing who might have been able to provide favorable testimony for the defense at trial. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Typically, that is the only method of establishing prejudice. If Smith could have provided the petitioner with an alibi had he testified at trial, he should have been produced as a witness at the evidentiary hearing. Otherwise, this court could only speculate as to what prejudice may have resulted by trial counsel's failure to subpoena him as a witness. In short, the petitioner cannot be afforded relief based upon the allegations that Debbie Arnold or Billy Smith should have been called to testify at trial.

II

Next, the petitioner argues that his trial counsel's failure to provide advice as to the potential length of the sentence is a basis for post-conviction relief. In support of his claim, he asserts that the testimony was uncontradicted at the evidentiary hearing, that trial counsel failed to give any advice regarding the length of his potential sentence upon conviction, and that, in consequence, he believed that he would receive only a twenty-year sentence if convicted. He points to his trial counsel's failure to give adequate advice as the reason he declined an offer by the state for a lesser sentence.

Because of his prior criminal record, the petitioner qualified for a Range II sentence. At the time of the trial, the sentence for a Range II offender was "not less than the minimum sentence plus one-half (1/2) of the difference between the maximum sentence and the minimum sentence, and not more than the maximum sentence." Tenn. Code Ann. § 40-35-109(b) (1982). Aggravated rape was designated as a Class X felony, carrying a minimum punishment of twenty years and a maximum punishment of life in prison. Tenn. Code Ann. § 39-2-603(b), (c) (1982). Thus, the petitioner faced a potential sentence of between forty years and life in prison. See Tenn. Code Ann. § 40-35-109(d)(1) ("For the sole and exclusive purpose of calculating the sentence ranges for offenses for which life imprisonment is a possible punishment, a life sentence shall be presumed to be sixty (60) years.").

At the evidentiary hearing, the petitioner testified that he rejected the plea offer made by the state because he understood that twenty years was the maximum punishment he faced if he went to trial. He claims that because his trial counsel did not inform him of the potential for a far greater sentence, he was unable to make an informed decision with regard to the plea offer.

The ABA Standards for Criminal Justice require that attorneys communicate plea offers promptly and fully:

> (a) Defense counsel should keep the accused advised of developments arising out of plea discussions conducted with the prosecutor.

> (b) Defense counsel should promptly communicate and explain to the accused all significant plea proposals made by the prosecutor.

ABA Standards for Criminal Justice: Prosecution Function and Defense Function, std. 4-6.2 (3d ed. 1993). The Commentary to Standard 4-6.2 emphasizes the attorney's duty to fully explain the ramifications of the plea offer:

> [T]he lawyer has the duty to communicate fully to the client the substance of [plea] discussions. . . . [T]he client should be given sufficient information to participate intelligently in the decision whether to accept or reject a plea proposal. It is important that the accused be informed both of the existence and the content of proposals made by the prosecutor; the accused, not the lawyer, has the right to decide whether to accept or reject a prosecution proposal, even when the proposal is one that

-8-

the lawyer would not approve. If the accused's choice on the question of a guilty plea is to be an informed one, the accused must act with full awareness of the alternatives, including any that arise from proposals made by the prosecutor.

Id., Commentary.

Our supreme court has held that the failure to communicate a plea offer to a defendant renders trial counsel's representation deficient. Harris v. State, 875 S.W.2d 662, 665-66 (Tenn. 1994). While the petitioner concedes that he was informed of the state's offer, he contends that he was unable to make an intelligent decision as to whether he should accept or reject it because trial counsel failed to advise him of the applicable sentencing range. Our supreme court has held that "effective counsel must be aware of the possible punishments applicable to his or her client." Dean v. State, 59 S.W.3d 663, 668 (Tenn. 2001). The Sixth Circuit Court of Appeals has held that it is important for trial counsel to correctly advise the defendant as to the potential punishment so that the defendant can intelligently consider any plea offer by the state:

> When considering a plea agreement, a defendant might well weigh the terms of the agreement against the maximum sentence he could receive if he went to trial. When the maximum possible exposure is overstated, the defendant might well be influenced to accept a plea agreement he would otherwise reject.

Pitts v. United States, 763 F.2d 197, 201 (6th Cir. 1985). The converse must necessarily be true. That is, if the maximum possible exposure is understated, a defendant might well be influenced to choose a trial. In the absence of any advice from counsel as to the potential punishment, an accused cannot make an informed decision to either reject or accept a plea offer.

In Pitts, the district court found that the defendant had been misinformed as to the maximum possible sentence on two of the three counts of the indictment. Pitts insisted that he would not have pled guilty if he had been properly advised by his counsel as to his total exposure. The cause was remanded for an evidentiary hearing and for the district court to determine "whether Pitts'[s] allegations regarding his attorney's misadvice are true, whether this misadvice went uncorrected and, if so, whether Pitts wold not have pled guilty but for the misadvice." Id.

In United States v. Rumery, 698 F.2d 764, 766 (5th Cir. 1983), the Fifth Circuit Court of Appeals held that the defendant was entitled to relief from his conviction and entitled to a new trial because trial counsel had mistakenly advised him that the maximum possible sentence was thirty years rather than five years. Similarly, in United States v. Scott, 625 F.2d 623, 625 (5th Cir. 1980), a guilty plea was invalidated in a collateral attack when the trial court erroneously informed the defendant that the maximum was five rather than six years. Finally, in Hammond v. United States, 528 F.2d 15, 18-19 (4th Cir. 1975), a defendant mounted a successful collateral attack on his conviction when his appointed counsel mistakenly calculated the maximum exposure at ninety years instead of fifty-five years.

In this case, the post-conviction court, after a recitation of the proof submitted at trial, denied relief without specifically addressing the credibility of the petitioner, whether the state had made a plea offer and under what circumstances, whether the petitioner had been misinformed about the potential length of the sentence (or advised at all in that regard), whether he might have learned of the minimum and maximum exposure through some other source, and, most importantly, whether he would have accepted the offer and pled guilty except for any misadvice. The Post-Conviction Procedure Act provides that "upon the final disposition of every petition," the post-conviction court shall not only enter "a final order," but "shall state the findings of fact and conclusions of law with regard to each such ground." Tenn. Code Ann. § 40-30-118(b)(1990) (emphasis added). When the post-conviction court fails to make discernable findings on disputed facts relating to the claim of ineffective assistance of counsel and the record does not include facts critical for review, this court is handicapped in the assessment of the issue. State v. Swanson, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984). The purpose of the statute, of course, is to facilitate appellate review. Id.

Because the post-conviction court failed to make factual findings on the above enumerated issues, the case must be remanded for the limited purpose expressed in the preceding paragraph. If the petitioner provides or has provided credible, unconverted testimony that he was misadvised as to the potential length of his sentence, that he did not have the information from any other source in advance of his decision to proceed to trial, and that but for the misinformation provided by his trial counsel or his trial counsel's complete failure to inform the petitioner of the potential maximum exposure, he would have accepted the plea offer from the state, he is entitled to relief.

Accordingly, the judgment of the post-conviction court is reversed and remanded for the limited purposes expressed herein.

_____
GARY R. WADE, PRESIDING JUDGE